BERRY *v.* GINACA and others.

*(Circuit Court, D. Nevada.* ———, 1880.)

1. TOWN-SITE ACT CONSTRUED—EQUITY—JURISDICTION.

Where Berry, who had entered land for a town site under section 2387, Rev. St., conveyed a portion of it to an occupant, and thereafter sued in equity to recover the price and to establish a vendor's lien therefor as against F., T. and D., who had purchased the same land at an execution sale, *held,* that the plaintiff, Berry, had no vendor's lien, and that, having failed to establish a right to the equitable relief demanded, he could have no decree in equity for the purchase money.

In Equity.

*George G. Berry, in pro. per.,* for plaintiff.

*I. B. Marshal,* for defendant.

HILLYER, D. J. The complaint in this suit states that on December 1, 1874, the plaintiff sold to the defendants J. Ginaca and A. Gintz, jointly, certain real estate, describing it, for the sum of $1,998.80; that no part of this has been paid, and that plaintiff has a lien as vendor upon the lands described for such unpaid purchase money; that Friend, Terry, and Doane claim some interest in the land which is subordinate to the vendor's lien. The prayer is for judgment against Ginaca and Gintz for the $1,998.80, with interest; for a decree subordinating the claim of Friend, Terry, and Doane to

the plaintiff's vendor's lien; for a sale of the lands, etc. There is nothing in the complaint to indicate that the sale by plaintiff to Ginaca and Gintz was made by him as town-site trustee, or in any other than his individual capacity. Ginaca and Gintz demurred; the demurrer was overruled, and they assigned to answer in 10 days. Having failed to answer in that time, default was entered against them.

The defendants Friend, Terry, and Doane answered, denying any sale from Berry to Ginaca and Gintz, or conveyance by him otherwise than as a town-site trustee, and setting up a purchase by them at sheriff's sale, upon an alleged judgment obtained by them against Ginaca and Gintz by confession.

The laws of the United States (Rev. St. § 2387) authorize, in a given case, a county judge to enter at the proper land-office land settled upon and occupied as a town site "in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town and the proceeds of the sale thereof," to be regulated by the state legislature.

The legislature of Nevada, after providing a mode of ascertaining the interests of the respective occupants, has required the trustee to convey, by a good deed, any parcel of the land to the person entitled, according to the right as it existed *at the time the entry was made.* 2 Comp. Laws Nev. § 3857.

After the patent has issued to the trustee from the United States, he is required to make such deed to the person legally entitled "on payment of his * * * proper and due proportion of the purchase money for said land," together with certain other allowances to the trustee for making the deed, acquiring the title, and administering the trust, "and the foregoing charge shall be full payment for all expenses attending the execution, except for revenue stamps." Id. § 3862.

Any shares or parcels of the land not legally conveyed within a fixed time are to be sold to the highest bidder for the benefit *of the town* in the erection of public buildings, to

which purpose the proceeds must be applied after paying purchase money and expenses. Id. § 3863. With these laws in force the plaintiff, Berry, in the year 1870, he then being district judge of Humboldt county, entered in conformity therewith 640 acres of land in trust for the several use and benefit of the inhabitants of the town of Winnemucca. After a contest with the Central Pacific Railroad Company about a part of the land so entered, the plaintiff, about May, 1874, received a patent for 200 acres as trustee for the inhabitants and occupants thereof, under the law of the United States above set forth. When the time for payment came, before the patent issued, the plaintiff sought from the inhabitants of the town the money to pay for the land, but they declined to furnish it. He then, in a conversation with a few of the inhabitants, agreed to furnish the money himself if they, the inhabitants, would allow him to take the vacant and unoccupied lands within the limits of the quarter section, to which they assented. Ginaca, one of the defendants, at that time had a quartz mill on one of the quarter sections, and agreed to furnish the money to pay for that quarter section at the land-office, and also to pay the plaintiff as trustee the town-site charges. Ginaca furnished $400 to enter the 160 acres on which his mill stood. Before the patent came Ginaca became considerably indebted to plaintiff, and asked him to let the $400 go into the general account, promising to pay for the land when the plaintiff should give him title. Six months later the plaintiff, as trustee under the laws aforesaid, deeded to Ginaca and Gintz 99 99-100 acres, that being the portion of the quarter section to which there was no other claimant. At this time no purchase money was paid by Ginaca and Gintz, other than the $400 as stated. The value of the land at the town-site rates would be about $30 an acre.

The foregoing is the substance of the plaintiff's own version of the transaction, (Ginaca being dead, his version of it has not been obtained;) and it appearing from it that he took the legal title to these lands, as a trustee under the statute, for the use and benefit of those legally entitled as occupants,

the question is whether the plaintiff can under such circumstances have a vendor's lien upon the land in dispute. We think it is clear that he cannot.

The authorities cited by plaintiff to show that a trustee may have a lien, have no reference to a vendor's lien. They merely state the doctrine that in suits between trustee and *cestui que trust*, if there is a fraud under the control of the court, the costs as well as the charges and expenses of trustees, when properly incurred, constitute a lien on the trust fund or estate in favor of the trustee, and he will not be compelled to part with the legal title until his claim is dischargd. Hill on Trustees, 567.

In this case there is no fund in court, nor is the *cestui que trust* calling for the legal title. The trustee has long since conveyed the legal estate to him. Under the statute, before so doing the trustee has a right to demand from the occupant to whom the deed is made everything to which he is entitled. This includes the occupant's share of the purchase money paid to the United States for the land, and some other sums for expenses of administering the trust. It is only upon payment of all these that the occupant is entitled to demand a deed. Indeed, in most if not all cases, it would be an abuse of the trust to convey without at least a prepayment of the grantee's share of the original purchase money. At all events, there is nothing in the statute giving the trustee a lien for these charges should he see fit to convey before they are paid. A vendor's lien can exist only for unpaid purchase money, if we admit the trustee in this case may be called, properly, a vendor.

It is a misapplication of terms to call the charges and expenses of a trustee, in administering his trust, purchase money, when he deeds the legal estate to his *cestui que trust* in execution of his duty as trustee. If the money paid to the United States is to be distinguished from the costs and charges, then that money Ginaca has paid. The testimony shows that before the cash entry was made by the plaintiff, as trustee, he received from Ginaca $400, to be applied to the payment of the land so entered at the rate of $2.50 per acre. The quan-

tity actually conveyed by the plaintiff to Ginaca and Gintz was a fraction less than 100 acres, so that the plaintiff in fact received from Ginaca before entry of the land more than the amount which can properly be called purchase money. Nor do we think the subsequent arrangement, if such there was, by which the $400 went into the general account between between plaintiff and Ginaca can have the effect of reviving the lien, supposing it to have ever existed. Under the statute, the *purchase money* is paid to the United States, which then conveys the town site to a trustee in trust for the benefit of its inhabitants. The United States is, properly speaking, the vendor and the inhabitants the real purchaser. The trustee, whether judge or town authorities, is a mere channel for the title, with no beneficial interest in the land, made use of as a convenient mode of vesting the title in the occupants of the town site according to their respective interests. His duties are prescribed by the law, and if he follows that law no such claim as that made in this suit can ever exist.

Upon the entry of a town site the government makes no inquiry in regard to the source from which the purchase money comes, but conveys upon receiving the price charged for the land. In case the entry is made by corporate authorities, the purchase money may, doubtless, come from the town treasury, or be raised by the inhabitants, so if the entry be by the judge the purchase money will ordinarily be raised in some way by the inhabitants; and, in any such case, it would be a clear breach of duty for the trustee to part with the legal title before a due proportion of the purchase money had been paid. Should the trustee himself advance the purchase money for the inhabitants, he takes the legal title still upon precisely the same trust as if it had come from some other source, and it seems clear that he cannot in this way change his relations to the property. He is still nothing but a trustee, and not the beneficial owner. Any attempt on his part to deal with the land as owner, independently, or in disregard of his trust, would be a breach of duty. He cannot, by advancing the purchase money, put himself in the

position of vendor as between him and his *cestuis que trust*.
The "due proportion" of the purchase money which is or should
be paid to him before making a deed is not purchase money,
as between a vendor and purchaser, for which a lien arises
when unpaid. It is a sum made payable by the statute, in
order that the occupant may not evade his just proportion of
the expenses incident to the purchase of the town site.

But the whole arrangement made between the plaintiff and
Ginaca was a plain departure, on the plaintiff's part, from
the course marked out by the statute. Berry, as trustee, had
no right to sell the vacant lands to any one, except in the
mode and for the purpose provided in the statute, (section
3863, *ante*,) and his whole agreement with Ginaca was illegal.
The duty of the trustee in this case, it seems to us, was
plain. When, after the entry of the town site, the inhabit-
ants declined to furnish the purchase money, the trustee
might doubtless obtain the money from some other source,
and so complete the purchase. But the entry having been
made as trustee, and the payment likewise, he could not law-
fully deal with the property in any other way than the law
pointed out to trustees. The transaction which actually took
place being illegal, no lien could arise out of it. No person
can acquire a lien founded upon his own illegal or fraudulent
act or breach of duty. *Randel* v. *Brown*, 2 How. 406.

Since the complainant has no lien to enforce, and the
establishing and enforcing of that alone gives him any stand-
ing in a court of equity, can he now have a decree against
the two defendants Ginaca and Gintz for the money alleged
to be due from them, they having made default? It is true,
as the plaintiff contends, that the defendants Friend, Terry,
and Doane have no concern in this after the lien is defeated.
But it may be a question of jurisdiction. Had the plaintiff
filed a bill to recover money due from Ginaca and Gintz,
simply, his bill would have been dismissed, his remedy at law
being plain and adequate. In such a case the suit would not
be within the jurisdiction of a court of equity, and, although
default should be made, the court would be without jurisdic-
tion to make a decree. Jurisdiction of a subject-matter not

properly of equitable cognizance cannot be thus conferred. Consent of parties cannot do it.

How is it when, as here, the plaintiff alleges in connection with his legal cause of action some equitable matter, which equitable matter is not sustained by proof? Can he have a decree under such circumstances for the legal matter? "Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." Rev. St. § 723. It is an established rule that where a court of equity has properly acquired jurisdiction over the subject for a necessary purpose, it is the duty of the court to proceed, and do final and complete justice between the parties, where it can as well be done in that court as at law. *Taylor* v. *Insurance Co.* 9 H. 405. In that case, after requiring a specific performance of an agreement to insure, the court went on (there having been a loss before the policy was delivered) and gave final relief on the policy. So, if a discovery is sought in aid of a claim purely legal, it may be obtained in a court of equity, which will afterwards go on and give the legal relief and determine the whole matter in controversey. But in such case, if the answer of the defendant discloses nothing and the plaintiff supports his claim by evidence in his own possession, "the established rules limiting the jurisdiction of courts require that he should be dismissed from the court of chancery" without prejudice as to the legal cause of action. *Russell* v. *Clark's Ex'r.* 7 Cranch, 89; Story's Eq. § 74.

In the opinion of Mr. Justice Woodbury, it was the design of our fathers in that clause of the judiciary act (now section 723, Rev. St.) not to permit proceedings to go on in chancery if it turned out in the progress of the inquiry that full and adequate relief could be had at law. *Pierpont* v. *Fowle,* 2 W. & M. 33, 34.

In *Graves* v. *Boston Ins. Co.* 2 Cranch, 419, it appeared that Graves had taken an insurance in his own name upon goods belonging to the partnership, while really intending to insure for the benefit of his firm. The suit was by the partnership to correct the alleged error in the policy, and to

recover the insurance. The court denied the only equitable relief asked, viz., the correction of the alleged error in the policy, and concluded by saying that "as the remedy of the plaintiff, Graves, on the policy, to the extent of his own interest, is complete at law, the decree of the circuit court dismissing his bill must be affirmed." Now, in that case, if the plaintiffs had obtained the equitable relief asked, the court of equity would have gone on and given full relief upon the reformed policy; but, the equitable relief being denied, nothing remained but a legal right capable of adequate redress at law, and the plaintiffs were dismissed to that forum. This case is cited in *Hipp* v. *Babin*, 19 How. 271, 278, to show that relief has been denied "in cases in equity where the remedy at law has been plain, adequate, and complete, though the question was not raised by the defendants in their pleadings, nor suggested by the counsel in their arguments;" because it is a question of jurisdiction, and "no admission of parties can change the law, or give jurisdiction to a court in a cause of which it hath no jurisdiction;" and, further, whenever a court of law is competent to take cognizance of a cause, the plaintiff must proceed at law, "because the defendant has a constitutional right to a trial by jury." "In the courts of the United States it (this question) is regarded as jurisdictional, and may be enforced by the court *sua sponte*, though not raised by the pleading nor suggested by counsel." *Parker* v. *Cotton & Woolen Co.* 2 Black, 545, 550. Where the remedy at law is adequate, the party seeking redress must pursue it. In such case the adverse party has a constitutional right to trial by jury." Id. 551.

It being a question of power to make a decree, the fact that Ginaca and Gintz have made default cannot give the court jurisdiction to decree in a case not of equitable cognizance. It seems to us clear that whenever no equitable relief is given the plaintiff can have no standing in a court of equity; for, in such cases, the only ground upon which a court of equity proceeds to give legal relief is that the party was compelled to come to the court of equity, and ought not to be deprived of the legal remedy incidental to his equitable claim. When,

therefore, the court determines that the plaintiff had no case for its equity side, it can do nothing, if it proceeds, except make a decree upon a legal matter. When the plaintiff is dismissed as to his equitable matter, it amounts to an adjudication that he has an adequate remedy for his legal claim in a court of law, and consequently that he never should have come with his suit into a court of equity.

Bill dismissed without prejudice to the complainant's legal cause of action.

SAWYER, C. J., concurred.